Filed 11/3/14  In re Emil K. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re EMIL K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,    Plaintiff and Respondent,         v. EMIL K.,    Defendant and Appellant. | G048990 (Super. Ct. No. DL035550) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Gregory W. Jones, Judge.  Affirmed.

Sarita Ordonez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise S. Jacobson and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

After the juvenile court denied his motion to suppress evidence obtained from searches of his pockets and backpack, Emil K. (minor), admitted violations of possessing a controlled substance (oxycodone) and possessing marijuana for sale. He appeals from an order declaring him a ward of the court, contending the court erred in denying his motion to suppress because the searches were not justified based on school policy or reasonable suspicion. We conclude reasonable suspicion supported the searches of his pockets and backpack. Thus, we need not address the Attorney General's additional argument that the search of the backpack was valid based on an abandonment theory. The judgment is affirmed.

## STANDARD OF REVIEW

"On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court which are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions." (*In re Joseph G.* (1995) 32 Cal.App.4th 1735, 1738-1739.) In determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Ibid.*) We affirm the denial of a motion to suppress if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the court. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.) We state the facts with these principles in mind.

## FACTS AND PROCEDURAL BACKGROUND

During an assembly attended by the entire student body, a campus supervisor caught minor trying to jump a fence surrounding the school in violation of

2

school policy. According to assistant principal Troy David Fresch (Fresch), the high school's "standard procedure" for such conduct "is to communicate with the student, let them know that they are violating a school rule," and "generally ask the student if he or she has anything in their possession that would also be in violation of school rules." The school "give[s] school officials permission to search student property" "based upon reasonable suspicion" to protect "the safety of the entire student body." "[I]f students are found with anything dangerous or illegal in their possession that could potentially harm themselves or others," school officials will "search the students, the[ir] possessions and the[ir] lockers." This "school policy applies to all the students at [the] high school."

After catching minor trying to jump over the fence, the campus supervisor asked him if he had anything in violation of school rules. Minor either said he had a lighter or the supervisor asked him to empty his pockets. Regardless, the supervisor found a lighter in minor's possession. Another supervisor took minor to his last class to retrieve his backpack, then brought him to Fresch's office and turned over the lighter.

Fresch asked minor to fill out a witness statement and thereafter "proceeded with the routine search of the [minor's] belongings based on the possession of the lighter." Before that, as per the school policy, Fresch informed minor his belongings would be searched based upon reasonable suspicion because he was in violation of the school rules. In searching the backpack, Fresch found marijuana, a pill, a plastic spoon, and a laminated index card. At that point, Fresch called in a police officer, who, upon further search, discovered large amounts of marijuana and notes indicating the profit to be made from selling it.

Minor moved to suppress the evidence. The parties stipulated minor had been contacted on campus "during school hours by school staff as he was climbing a fence in an attempt to ditch school." Minor argued there was no connection between his actions and the search. He claimed that while attempting to ditch school is "itself evidence of the violation of a school rule . . . , there is no indication that searching him

3

would produce evidence of any articulable crime or violation of policy" and did not justify a search of his person or backpack.

The court denied the motion, relying on *In re Sean A.* (2010) 191 Cal.App.4th 182, 188 (*Sean A.*), which affirmed a school search conducted pursuant to a written policy received by students and parents.

DISCUSSION

*1.0 Waiver*

Minor argues insufficient evidence exists "of a blanket policy with notice to parents and students." The Attorney General claims this contention has been waived because it was not raised in the juvenile court. We disagree.

At the suppression hearing, minor's counsel distinguished the present case from truancy or out-of-bounds cases in which there is a school policy describing the parameters of when a student is allowed to be searched. He also argued the school's policy was not established in that "sometimes they search and sometimes they simply return the person to campus," a factor distinguishing this case from *Sean A.*, *supra*, 191 Cal.App.4th 182. We deem this sufficiently preserved the issue for appeal.

*2.0 Validity of Search*

The Fourth Amendment applies to searches of students attending public schools. (*Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 656 [115 S.Ct. 2386, 132 L.Ed.2d 564]; *In re Randy G.* (2001) 26 Cal.4th 556, 561 (*Randy G.*).) But in the context of schools, the Fourth Amendment must be applied in a manner accommodating the governmental interest in our education system. (*Randy G.*, at p. 566; see also *Sean A.*, *supra*, 191 Cal.App.4th at p. 186 [when applying Fourth Amendment to school searches,

4

"[t]he need to maintain discipline, provide a safe environment for learning and prevent the harmful impact on the students and staff of drugs and weapons cannot be denied"].)

"'Special needs' inhere in the public school context." (*Board of Education v. Earls* (2002) 536 U.S. 822, 829 [122 S.Ct. 2559, 153 L.Ed.2d 735].)  Thus, "the legality of a search of a student should depend simply on the reasonableness, under all circumstances, of the search." (*New Jersey v. T.L.O.* (1985) 469 U.S. 325, 341 [105 S.Ct. 733, 83 L.Ed.2d 720] (*T.L.O.*); see *Sean A.*, *supra*, 191 Cal.App.4th at p. 186 ["strict application of the principles of the Fourth Amendment as used in criminal law enforcement matters does not appropriately fit the circumstances of the operation of the public schools"].)

The courts have generally distinguished between two types of public school searches:  (1) administrative or regulatory searches conducted pursuant to an established policy or procedure, rather than on individualized suspicion (see generally *Sean A.*, *supra*, 191 Cal.App.4th at p. 188 [established policy of which students and parents had notice requiring students returning to school to empty pockets held valid]; *In re Latasha W.* (1998) 60 Cal.App.4th 1524 (*Latasha W.*) [written policy for random daily searches conducted by metal detector held valid where notice given to parents and students before implementation]); and (2) searches predicated on individualized suspicion of wrongdoing. (*In re Lisa G.* (2004) 125 Cal.App.4th 801, 804 (*Lisa G.*).)

Minor contends the searches were not properly conducted under either an established policy or an individualized suspicion.  We conclude they were valid based on a reasonable suspicion of wrongdoing.

*2.1  Administrative or Regulatory Search*

Ordinarily a search or seizure in the absence of individualized suspicion of criminal activity is unreasonable and violates the Fourth Amendment.  (*City of Indianapolis v. Edmond* (2000) 531 U.S. 32, 37 [121 S.Ct. 447, 148 L.Ed.2d 333]; *Randy*

5

*G*., *supra*, 26 Cal.4th at p. 565.)  However, in the context of schools, courts have upheld the use of "'special needs' administrative searches, conducted without individualized suspicion, . . . where the government need is great, the intrusion on the individual is limited, and a more rigorous standard of suspicion is unworkable." (*Latasha W.*, *supra*, 60 Cal.App.4th at p. 1527.)  These administrative searches are generally deemed to be lawful when conducted pursuant to an established policy that includes "'safeguards' . . . 'to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field.""" (*T.L.O.*, *supra*, 469 U.S. at p. 342, fn. 8.)

Thus, individualized suspicion is not required for searches conducted pursuant to an established written policy based upon the "'special needs'" of the school, when the policy applies to all students, the students and their parents have notice of the policy, and the search is carried out in a minimally intrusive manner.  (*Sean A.*, *supra*, 191 Cal.App.4th at pp. 188-190; see *Latasha W.*, *supra*, 60 Cal.App.4th at pp. 1526-1527.)  Here, the prosecution failed to present any evidence the policy testified to by Fresch was written, established, or that notice of it had been provided to the students or their parents.  Thus, no special needs exception applied here.

The Attorney General argues "the legality of a student search turns not on notice, but 'simply' on the search's reasonableness, i.e., whether the search was justified and carried out in a reasonable manner."  This confuses the administrative or regulatory searches made under an established policy or procedure, with searches based on individualized suspicion.  The Attorney General does not explain how an administrative search can be lawful without "'safeguards'" such as prior notice that would ensure a student's reasonable expectation of privacy is not subject to a school administrator's discretion. (*T.L.O.*, *supra*, 469 U.S. at p. 342, fn. 8.)  Nor does she distinguish *Sean A.*, *supra*, 191 Cal.App.4th at pages 188-190 or *Latasha W.*, *supra*, 60 Cal.App.4th at pages 1526-1527.

6

The Attorney General also asserts we must defer to the court's finding based on Fresch's undisputed testimony "that the school's search policy was legitimate and validly in place." But the court observed only that the facts here were "virtually identical to those in *Sean A*., *supra*, 191 Cal.App.4th 182. It did not discuss the differences between the established policies in *Sean A.* and the one at issue here. Nor did it actually state the search policy in this case was established. Even if it had, we review de novo whether the facts support the court's legal conclusion. (*In re Joseph G*., *supra*, 32 Cal.App.4th at pp. 1738-1739.) They do not.

The search was not valid as an administrative or regulatory search conducted pursuant to a school policy.

### 2.2  Reasonable Suspicion

Determining the reasonableness of a student search involves "a two-fold inquiry:  (1) whether the search was justified at its inception, and (2) whether the scope of the search, as actually conducted, was reasonably related to the circumstances that justified the initial search." (*Lisa G*., *supra*, 125 Cal.App.4th at p. 805; *T.L.O*., *supra*, 496 U.S at p. 341.)  A search is justified at its inception if "there are reasonable grounds for suspecting the search will disclose evidence the student has violated or is violating the law or school rules." (*Lisa G*., at p. 806; *T.L.O*., at pp. 341-342.)  There "must be articulable facts supporting that reasonable suspicion" (*In re William G.* (1985) 40 Cal.3d 550, 564), as well as "[a] correlation between the wrongful behavior of the student and the intended findings of the search." (*Lisa G*., at p. 807.)  Whether the facts support a reasonable suspicion of wrongdoing "is measured by an objective standard, not by the particular [school administrator's] state of mind at the time of the [search]." (*People v. Conway* (1994) 25 Cal.App.4th 385, 388.)  "In sum, [the] standard [applicable to student searches based on individual suspicion] requires articulable facts, together with rational inferences from those facts, warranting an objectively reasonable suspicion that the

7

student or students to be searched are violating or have violated a rule, regulation, or statute." (*William G.*, at p. 564.)

Here, the search of minor's pocket was reasonable under the Fourth Amendment. The campus supervisor objectively could have determined minor's evasive behavior in trying to jump the school fence suggested he had either committed a crime or was trying to hide evidence of a crime. (*In re H.M.* (2008) 167 Cal.App.4th 136, 144 ["Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. [Citation.] Viewed objectively, through the lens of common sense and experience, H.M.'s odd behavior strongly suggested criminal activity was afoot. Indeed, we can conceive of few hypotheses explaining H.M.'s conduct, other than that he was either a perpetrator or a victim fleeing a crime scene"].)

The fact a lighter was found on minor's person thereafter provided reasonable suspicion for Fresch to search the backpack, as that reasonably led to the question of what the lighter was for. It strongly suggested minor possessed other contraband in violation of school rules or the law. To that end, it would have been illegal for minor to possess marijuana or other controlled substance (Health & Saf. Code, §§ 11357, subd. (e), 11350, subd. (a)), as well "any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking of tobacco, products prepared from tobacco, or any controlled substance." (Pen. Code, § 308, subd. (b).) The search of minor's backpack was thus reasonably related to the circumstances that justified the initial search of his pockets. (See *In re Cody S.* (2004) 121 Cal.App.4th 86, 93-94 [Cody's admission he had a knife justified search of his backpack: "The continued search after the discovery of the knife was also justified. Having found both a knife and other contraband, Stanley could reasonably have entertained the suspicion that the minor's backpack contained additional contraband items in violation of the law or of school rules, or both"].)

DISPOSITION

The order is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.